# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR FIRST UNITED BANK, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 16 C 6250 |
| DONALD BOROWSKI; KEVIN GORMAN; WAYNE HAMEISTER; RICHARD LINDEMAN; DONALD OLIVIERI, JR.; and DAVID ZEGLIS, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This matter comes before the Court on Defendants Donald Borowski, Kevin Gorman, Wayne Hameister, Richard Lindeman, Donald Olivieri, Jr., and David Zeglis' (collectively, "Defendants") motion to dismiss Plaintiff Federal Deposit Insurance Corporation as Receiver for First United Bank's (the "FDIC") complaint filed on June 15, 2016 (the "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 10(b). For the reasons set forth below, Defendants' motion is denied.

## BACKGROUND

For purposes of the instant motion, the following well-pleaded allegations derived from the Complaint are accepted as true. *Ed Miniat. Inc. v. Global Life Ins.*

*Grp., Inc.*, 805 F.2d 732, 733 (7th Cir. 1986); *Dilallo v. Miller & Steeno, P.C., et al.*, No. 16 C 51, 2016 WL 4530319, at *1 (N.D. Ill. Aug. 30, 2016). This principle, however, does not apply to legal conclusions; the Court will not consider conclusory claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court draws all reasonable inferences in the FDIC's favor and construes all allegations in the light most favorable to it. *Ed Miniat. Inc.*, 805 F.2d at 733; *Dilallo*, 2016 WL 4530319, at *1.

"On September 28, 2012, the Illinois Department of Financial and Professional Regulation closed First United Bank, Crete, Illinois" ("First United"), and appointed the FDIC as Receiver. Defendants are former First United directors, officers, or both. The FDIC alleges that from 2003 until early 2009, "Defendants embarked on an overly aggressive growth program" for First United, which "included high risk credit facilities." The FDIC contends that "Defendants ignored proper credit risk management and failed to engage in underwriting practices" to safely grow First United's loan portfolios. Defendants also allegedly failed to sufficiently staff First United in the areas of lending and credit administration "to properly underwrite and oversee [its] rapidly expanding and increasingly complex loan portfolio," and failed to implement "appropriate controls in the lending process" to protect depositors.

From September 2007 through February 2009, among other things, the FDIC claims that Defendants approved ten loans which were poorly underwritten (the "Subject Loans"). The Subject Loans include four loans to borrower JMR Management—the September 2007 and 2008 loans and two February 2009 loans.

They also include single loans to the following borrowers: Grand Central Properties, Stead Corporation, The Insurance Store, HomeStar Financial, First Personal Financial, and Trim Creek. The underwriting deficiencies of the Subject Loans were purportedly obvious from loan presentations. The Subject Loans supposedly violated First United's loan policy, which articulated "a goal of eliminating high risk loans," and listed certain loans as "undesirable." The FDIC maintains that the Subject Loans also violated sensible lending standards and "safe and sound banking practices" because they had inadequate debt service coverage ratios, and they were backed by insufficient collateral. In sum, the FDIC claims that Defendants "fail[ed] to inform themselves of material facts necessary to evaluate the merit of each credit decision." According to the FDIC, the material facts of which Defendants should have been aware include "the repayment ability of the borrower, the financial strength of guarantors, and the sufficiency of underlying collateral to protect" First United "in the event of a default."

The Complaint contains three counts, alleging: (i) negligence under Illinois law (Count I); (ii) gross negligence in violation of 12 U.S.C. § 1821(k) (Count II); and (iii) breach of fiduciary duty pursuant to Illinois law (Count III). Counts I and III are pled in the alternative. The FDIC seeks "judgment in its favor and against Defendants" for: "compensatory damages of at least $8.05 million, and any excess amount as may be proved at trial, with each Defendant found jointly and severally liable for the losses on the Subject Loans he approved;" "costs of suit against all Defendants;"

prejudgment interest; "attorneys' fees and costs for the investigation and litigation;" and "such other and further relief as this Court deems just and proper."

On August 15, 2016, Defendants filed a motion to dismiss the Complaint and memorandum in support thereof, raising at least seven arguments, which are framed as four. First, Defendants contend that the FDIC uses "improper group pleading," violating Rule 10(b) by grouping multiple defendants and combining "ten separate transactions into single causes of action" in the Complaint. Second, Defendants claim that "the FDIC fails to adequately allege negligence in Count I and breach of fiduciary duty of care in Count III." Within their second argument, Defendants contend that: (i) "the FDIC's claims regarding the September 2007 JMR Management Loan are time barred;" (ii) Defendants "are shielded from liability for negligence and breach of fiduciary duty by the Business Judgment Rule," (the "BJR"); and (iii) "the FDIC fails to allege that Defendants' purported breaches of duty proximately caused damage to the FDIC." Third, Defendants argue that "the FDIC fails to adequately allege gross negligence under" The Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") in Count II. Fourth, Defendants claim that the FDIC does not make any "allegations with respect to certain defendants regarding certain subject loans."

In response, first, the FDIC contends that "the Complaint states claims against all Defendants," and that it "alleges all elements of every claim," arguing that "Defendants mischaracterize the applicable pleading standard," which only demands "notice of a plausible right to relief." Second, the FDIC asserts that the Court should

not dismiss any claim because "claims based on the first JMR Management Loan are timely," and the "application of the [BJR] cannot be resolved on a motion to dismiss." The FDIC cites to ample recent, on-point Northern District of Illinois cases where the FDIC as Receiver "sued officers and/or directors of several other failed Illinois banks, bringing the very same claims alleged here . . . based on similarly detailed allegations setting forth comparable factual scenarios," arguing that we should not "deviate from the unanimous, well-reasoned, and legally sound precedent in this District."[1]  We agree, and find no reason to deviate therefrom.

---

[1] *See, e.g.*, *Fed. Deposit Ins. Corp. v. Giancola*, No. 13 C 3230, 2014 WL 1056643, at *1 (N.D. Ill. Mar. 19, 2014) (Gottschall, J.) (claiming that "Defendants disregarded the bank's own policies in approving . . . loans by failing to ensure the borrowers' ability to repay, disregarding evidence of the borrowers' financial weakness, and structuring loans with terms that were unreasonably generous to the borrowers"); *Fed. Deposit Ins. Corp. v. Amy*, No. 13 C 5888, 2014 WL 1018136, at *1 (N.D. Ill. Mar. 13, 2014) (Kendall, J.) (claiming that bank "suffered losses due to loans approved by [officer] and his co-defendants in violation of [bank's] loan policy, underwriting guidelines, and prudent loan practices"); *Fed. Deposit Ins. Corp. v. Elmore*, No. 13 C 1767, 2013 WL 6185236, at *2 (N.D. Ill. Nov. 22, 2013) (St. Eve, J.) (claiming that defendants disregarded "the Bank's loan policies, prudent lending practices, and regulatory warnings about deficiencies in [the Bank's] underwriting, administrative, and operational practices in connection with" the loans); *Fed. Deposit Ins. Corp. v. Pantazelos*, No. 13 C 2246, 2013 WL 4734010, at *1 (N.D. Ill. Sept. 3, 2013) (St. Eve, J.) (claiming that defendants "disregard[ed] the Bank's loan policies, prudent lending practices, and regulatory warnings in connection with various . . . loans"); *Fed. Deposit Ins. Corp. v. Giannoulias*, 918 F. Supp. 2d 768, 770 (N.D. Ill. 2013) (Grady, J.) (claiming that bank directors and officers "pursued a strategy of 'reckless growth,'" approving loans after "perfunctory or nonexistent" underwriting, "ignoring the bank's loan policy"); *Fed. Deposit Ins. Corp. v. Mahajan*, No. 11 C 7590, 2012 WL 3061852, at *5 (N.D. Ill. July 26, 2012) (Kendall, J.) (claiming that defendants "approved risky loans in problematic economic sectors, with insufficient staffing," violating the bank's loan policy); *Fed. Deposit Ins. Corp. v. Spangler*, 836 F. Supp. 2d 778, 783 (N.D. Ill. 2011) (Dow, J.) (claiming that defendants "adopted an aggressive asset growth strategy that violated [the Bank's] business plan," and "compromised [the Bank's] credit underwriting and administration"); *Fed. Deposit Ins. Corp. v. Saphir*, No. 10 C 7009, 2011 WL 3876918, at *3 (N.D. Ill. Sept. 1, 2011) (Pallmeyer, J.) (claiming that "Defendants engaged in or allowed a host of sloppy practices relating to the CRE loans").

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss "'tests the sufficiency of the complaint, not the merits of the case.'" *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012) (quoting *McReynolds v. Merrill Lynch & Co.*, No. 08 C 6105, 2011 WL 1196859, at *2 (N.D. Ill. Mar. 29, 2011), *aff'd* 694 F.3d 873 (2012)). The allegations in a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must "give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). A plaintiff need not offer "detailed factual allegations," but he or she must provide enough factual support "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## DISCUSSION

### I.     The Complaint in its Entirety

The Court begins with an analysis of Defendants' arguments that pertain to the Complaint as a whole, first addressing their grievances regarding the general manner in which the FDIC pleads its allegations against Defendants in Parts I.A and I.B, prior to discussing Defendants' count-specific arguments in Part II.

## A.    Group Pleading

Defendants contend that the FDIC violates Rule 10(b) by grouping multiple defendants and combining "ten separate transactions into single causes of action" in the Complaint.  According to Defendants, "there is no equitable basis for allowing the FDIC to circumvent" Rule 10(b), and the Complaint is problematic because: (i) it is unclear "which Defendants are alleged to have engaged in which allegedly tortious conduct and pursuant to which standard of care;" (ii) "the FDIC seeks aggregated damages—stemming from all ten Subject Loans—against all Defendants in contradiction of the allegations in the Complaint;" and (iii) it "unfairly precludes Defendants from being able to challenge . . . the sufficiency of the FDIC's claims on a loan-by-loan basis."

"If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense."  Fed. R. Civ. P. 10(b).  However, as this Court has stated before, we continue to hold: "courts in this district do not dismiss a claim for failure to comply with Rule 10(b) unless the complaint is not understandable and does not provide the defendant with fair notice of the claims against him."  *Plohocki v. Chi. Sch. Reform Bd. of Trustees*, No. 99 C 6710, 2000 WL 150748, at *6 (N.D. Ill. Feb. 4, 2000).  The Court finds that the FDIC has provided Defendants with fair notice.  In fact, with six Defendants, ten underlying transactions, and three causes of action, the Complaint's structure is an attempt at succinctness.

First, Defendants argue that the Complaint is unclear "regarding which Defendants are alleged to have engaged in which allegedly tortious conduct and pursuant to which standard of care," citing *Pennsylvania Chiropractic Association v. Blue Cross Blue Shield Association*, among others. This case is different from *Pennsylvania Chiropractic Association* where, in the Complaint, plaintiffs simply included a "sentence stating that each plaintiff brings his claim only against that defendant that harmed him." *See* No. 09 C 5619, 2010 WL 3940694, at *3 (N.D. Ill. Oct. 6, 2010) (maintaining that plaintiffs' second amended complaint containing "a single sentence purporting to clarify that each individual plaintiff seeks only to recover against the individual defendant that injured him" is insufficient to correct plaintiffs' errors where they "treat[ed] the claims as one collective claim," sought "to represent a single class . . . against all the [named] defendants," and sought collective damages). Here, while Counts I-III are pled against "Defendants," they also re-allege and reincorporate the preceding paragraphs. The prior paragraphs break down the transactions by Subject Loan, "explicitly identif[y] which . . . Defendants voted for each loan," and allege actions and omissions by specific Defendants purportedly leading to breaches of duties. *See McDougall v. Donovan*, 552 F. Supp. 1206, 1209 (N.D. Ill. 1982) ("Under Rule 10(b), where the gist of the complaint is a scheme, plan or course of conduct, there is no requirement that each claim be stated separately merely because all the defendants may not be involved in each act or transaction."). This sufficiently provides Defendants with notice of who is "alleged to have engaged

in which allegedly tortious conduct and pursuant to which standard of care." *See, e.g.*, *Giannoulias*, 918 F. Supp. 2d at 773 (rejecting outside director defendants' arguments that "they should be treated differently than the other [officer] defendants with respect to the challenged loans").

Next, Defendants express concerns that "by conflating the six individual Defendants into a single group, the FDIC seeks aggregated damages . . . against all Defendants in contradiction of the allegations in the Complaint." These concerns are unfounded. The FDIC does not assert causes of action for specific Subject Loans against Defendants "who did not approve the Subject Loan." Nor does the FDIC seek to hold liable *every* Defendant for *every* Subject Loan, irrespective of his lack of involvement in its approval. This is clear from the limited prayer for relief, with a narrow request that "each Defendant [be] found jointly and severally liable for the losses on the Subject Loans *he* approved," in contrast with the broad call "[f]or its cost of suit against *all* Defendants."

Finally, the Court is unconvinced with Defendants' argument that they are unfairly precluded from challenging "the FDIC's claims on a loan-by-loan basis" because it "condenses all ten Subject Loans into" single causes of action for negligence, gross negligence, and breach of fiduciary duty. The pleadings in no way prevent Defendants from raising their substantive arguments regarding defenses and divergent standards that may apply to certain Defendants and not to others "by virtue of their former positions at First United Bank" on a loan-by-loan basis as the case

progresses. *See, e.g.*, *Mahajan*, 2012 WL 3061852, at *5 (upholding claims although plaintiff did not distinguish officer defendants from director defendants). It seems that Defendants would like all ten Subject Loans to be alleged as separate causes of action, which is unnecessary. The FDIC's present alleged distinctions among the Subject Loans and the Defendants who did or did not participate in approving each of them in the paragraphs preceding the three counts is sufficient. *See, e.g.*, *Palmer v. Bd. of Educ. of Cmty. Unit Sch. Dist. 201-U, Will Cty., Ill.*, 46 F.3d 682, 688 (7th Cir. 1995) (reversing judgment of district court and stating that "[i]t is enough to specify the wrong done and leave details to later steps"); *Mahajan*, 2012 WL 3061852, at *5; *Garibay v. City of Chi. Police Officers*, No. 96 C 2169, 1997 WL 211225, at *2 (N.D. Ill. Apr. 18, 1997) (finding, despite confusing pleadings, that a violation of Rule 10(b) alone "is not enough to dismiss the complaint").

"The primary purpose of [Rules 8 and 10] is to give defendants fair notice of the claims against them and the grounds supporting the claims." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011); *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013). "[W]here the lack of organization and basic coherence renders a complaint too confusing to determine the facts that constitute the alleged wrongful conduct, dismissal is an appropriate remedy." *Stanard*, 658 F.3d at 798–99 (affirming district court's dismissal of plaintiff's second amended complaint which violated Rules 8 and 10 by, among others, lacking punctuation, containing grammatical and syntactical errors, being nearly incomprehensible, consisting of "gibberish," failing to

follow directions, and failing to put defendants on notice).  That is not the case here.  Just as in *Spangler*, Defendants "cannot plausibly suggest that they do not understand the allegations against them."  836 F. Supp. 2d at 788.

## B. Matching Defendant with Subject Loan

Defendants assert that the "FDIC makes no allegations regarding certain Defendants on certain Subject Loans."  For example, Defendants claim that the FDIC does not allege that Borowski was involved in First United's loans to The Insurance Store, Trim Creek, and JMR Management in 2008.  Instead, the Complaint states that Borowski "approved seven of the Subject Loans."  Thus, Defendants argue that "the FDIC's claims for negligence, gross negligence, and breach of fiduciary duty must be dismissed with respect to . . . Borowski regarding these three Subject Loans." Similarly, Defendants contend that the FDIC concedes that Gorman "was not involved in First United's loan to The Insurance Store."  Therefore, they argue that the FDIC's three claims "must be dismissed with respect to . . . Gorman regarding this Subject loan."  Defendants distinguish *Giannoulias* by arguing that "[i]n *Giannoulias* . . . the FDIC explicitly stated that an individual defendant was liable for only some of the challenged loans . . . whereas here, the FDIC attempts to hold *all* Defendants . . . liable for *all* Subject Loans" despite not alleging that all Defendants participated in the approval of all ten loans.  That is not the case, as discussed above.  Nowhere does the FDIC attempt to hold "*all* Defendants . . . liable for *all* Subject Loans," irrespective of each Defendant's participation in the approval thereof.  Logically, if

the FDIC does not allege that a particular Defendant was involved in the approval of a specific loan, then he cannot have failed with respect to it.

Moreover, the Complaint is not confusing. It is organized by Subject Loan, with the very first paragraph under each specific Subject Loan listing the names of the Defendants that approved it (to the exclusion of some), on what date, to what borrower, a description of the borrower, and a sum certain. The FDIC also provides allegations to the effect of how each approval breached Defendants' duties. Defendants certainly have "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C.*, 496 F.3d at 776 (quoting *Twombly*, 550 U.S. at 545); *see Mahajan*, 2012 WL 3061852, at *5 ("[T]he FDIC has pleaded that the Director Defendants breached their duty by approving some or all of twelve specific loans, has described each of the Loss Loans in detail, and has included in the Amended Complaint a chart showing which Director Defendants and Officer Defendants voted to approve each of those Loss Loans . . . . [They] cannot claim that [they] lack[ ] adequate notice."); *Spangler*, 836 F. Supp. 2d at 786–87 (maintaining that the complaint need not "discuss separately each Loan Committee Defendant" where it alleges "which members of the Loan Committee personally approved each 'Loss Loan' and the date of that approval," along with "why Plaintiff believes the approval of that loan was grossly negligent").

## II.    Purportedly Inadequate Allegations

The Court now turns to Defendants' count-specific grievances, claiming that the FDIC inadequately pled each respective cause of action.

### A.    Allegations of Negligence and Breach of Fiduciary Duty of Care

Defendants argue that "the FDIC fails to adequately allege negligence in Count I and Breach of Fiduciary Duty of Care in Count III."  The elements of "negligence and breach of fiduciary duty claims are similar."  *Giannoulias*, 918 F. Supp. 2d at 772 (internal citation omitted).  The FDIC must allege "a duty owed by [Defendants] to the plaintiff, a breach of that duty, and an injury proximately caused by the breach." *First Fin. Bank v. OSF Healthcare Sys.*, 2016 IL App (4th) 150503-U, ¶ 23; *Goldberg v. Glenstone Homeowners Ass'n*, 2015 IL App (2d) 141025-U, ¶ 66.  The applicable standard of care "'is that which ordinarily prudent and diligent persons would exercise under similar circumstances,'" which requires the Court to "'review all of the circumstances of the particular case.'"  *Spangler*, 836 F. Supp. 2d at 785 (quoting *FDIC v. Bierman,* 2 F.3d 1424, 1427 (7th Cir. 1993)).  Defendants take issue with each of these elements, arguing that none were sufficiently pled.  The FDIC maintains that "the Complaint alleges all elements of every claim."  We agree with the FDIC.

### 1.    Duty and Breach

Defendants argue that the FDIC does not adequately allege a duty owed by them and a breach thereof.  The FDIC maintains that "[t]he Complaint describes a litany of [Defendants'] errors and omissions . . . , which taken together allege that

they did not exercise the care 'which ordinarily prudent and diligent persons would exercise under similar circumstances.'" *See id.* Rather than looking at the allegations of duty and breach as a whole, Defendants isolate the FDIC's claims and overlook the applicable standard. Defendants conclude that "[t]he FDIC alleges three specific types of duties owed by Defendants," including a duty to: (i) "approve 'only those loans that conformed with the Loan Policy;'" (ii) "'ensure'[2] that approved loans were underwritten in a safe and sound manner, were secured by sufficiently valuable collateral and guarantees, were made to creditworthy borrowers, and did not violate applicable banking laws and regulations;" and (iii) "inform themselves about proposed loans, and the risks thereof, before approving them." Defendants then claim that "[t]he first two of these purported duties are not duties at all and thus do not support claims for negligence and breach of fiduciary duty," arguing that the FDIC only alleges one cognizable duty. Defendants are missing the forest for the trees. It is not these three "duties" that are dispositive, but rather, the FDIC must allege and sufficiently plead that Defendants had a duty of reasonable care, which they subsequently breached. *See Spangler*, 836 F. Supp. 2d at 785; *Pantazelos*, 2013 WL

---

[2] Defendants assert that they did not have a duty "to 'ensure' any results," using the Merriam-Webster Dictionary's definition of "ensure," which is defined as to "guarantee." They argue that bank directors are not insurers. *See Wallach v. Billings*, 277 Ill. 218, 233 (1917). For Defendants' peace of mind, the FDIC "does not allege that . . . Defendants must 'ensure'" outcomes, only that Defendants "ensure that the Subject Loans were underwritten in a safe and sound manner," "were secured by sufficiently valuable collateral and guarantees," and "did not violate applicable banking laws and regulations." These allegations lend support for the FDIC's claims of negligence. *See Spangler*, 836 F. Supp. 2d at 787, 783 (alleging "failure to ensure that safe and sound lending practices were followed to protect the bank and its depositors," and failure "to follow the bank's written lending policies and ensure prudent underwriting").

4734010, at *6; *Zahl v. Krupa*, 399 Ill. App. 3d 993, 1016 (2010) (stating that bank

directors are "bound to the observance of ordinary care and diligence") (emphasis

omitted).

The FDIC alleges that Defendants were former First United directors, officers,

or both, and that they "owed a duty to use reasonable care, skill, and diligence in the

performance of their duties." The FDIC alleges breach through its pleading of these

three "duties," which are actually Defendants' purported actions and failures to act.

Re-alleging and incorporating the allegations contained in the preceding paragraphs,

the FDIC provides specific examples of Defendants' aforelisted alleged failures. In

*Giannoulias*, Judge Grady stated that the FDIC "identifie[d] the challenged

transactions, describe[d] them in sufficient detail, and explain[ed] why it believes that

the defendants' conduct fell below the applicable standard of care," concluding that

the FDIC adequately pled its claims, and stating that the Court does "not consider it a

close question." 918 F. Supp. 2d at 772. Neither do we; the allegations are sufficient.

### 2. Proximate Causation in Count I

Regarding the FDIC's negligence claim, Defendants argue that it "fails to

allege that Defendants' purported breaches of duty proximately caused damages to the

FDIC." "[F]or a director to be liable, any breach of these standards must also be the

proximate cause of the injury to the bank." *Bierman*, 2 F.3d at 1427; *Saphir*, 2011

WL 3876918, at *6. "Defendants' acts or omissions need not 'be the sole cause' of

the bank's losses," they "need only be a substantial factor in producing the injury," if

it was "reasonably foreseeable at the time of the wrongful act." *Saphir*, 2011 WL 3876918, at *6.

Defendants' argument is not that the FDIC failed to *plead* proximate cause, but rather *what* the proximate cause of the injury was, as a matter of fact. Defendants claim that "the true proximate cause" of the FDIC's alleged losses appears on the face of the Complaint: that "the borrower holding companies' subsidiary banks 'entered into a Consent Order with the FDIC, which prohibited the bank[s] from declaring or paying a dividend without [the FDIC's] prior written consent.'" Defendants contend that the FDIC "prevented the subsidiary banks from providing their respective holding companies with the funds needed to make loan payments to First United," and therefore, "the holding companies were forced to default on their loans." Thus, Defendants assert that "[t]he FDIC has pled itself as the proximate cause of its alleged losses," and also argue that the FDIC was, in fact, the proximate cause. Here, Defendants would like the Court to determine *what* the proximate cause of the FDIC's alleged losses was, not *whether the FDIC has sufficiently pled* proximate causation. Proximate causation is typically "a question for the finder of fact to decide; only rarely are the facts so clear that the court can resolve the issue as a matter of law." *Palay v. United States*, 349 F.3d 418, 432–33 (7th Cir. 2003). Accordingly, the Court does not determine what, in fact, proximately caused the FDIC's alleged damages at this time. Proximate causation is, however, adequately alleged.

### 3. The Applicability of the BJR to Counts I and III

Defendants argue that the FDIC's negligence and breach of fiduciary duty claims must be dismissed because the FDIC did not plead around the BJR. In response, the FDIC argues that the "application of the [BJR] cannot be resolved on a motion to dismiss."

"Under Illinois law, the [BJR] 'is a presumption that directors of a corporation make business decisions on an informed basis, in good faith, and with the honest belief that the course taken was in the best interest of the corporation.'" *Giancola*, 2014 WL 1056643, at *3 (quoting *Mahajan*, 2012 WL 3061852, at *7). The BJR "protect[s] directors who have been diligent and careful in performing their duties from being subjected to liability from honest mistakes of judgment." *Id.* "'[I]t is a prerequisite to the application of the [BJR] that the directors exercise due care in carrying out their corporate duties.'" *Id.* (quoting *Davis v. Dyson,* 900 N.E.2d 698, 714 (Ill. App. Ct. 2008)).

Defendants would like the Court to disregard the case law in this District which holds that "[t]he [BJR] is a defense," *Saphir*, 2011 WL 3876918, at *5 (quoting *Alliant Energy Corp. v. Bie*, 277 F.3d 916, 918 (7th Cir. 2002)) (emphasis omitted), and that it does not "justify dismissal under 12(b)(6)." *Id.* (quoting *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003)). Defendants argue that the cases holding that the BJR is an affirmative defense are wrong because they rely on *Alliant*, and it "does not support the proposition for which it is cited." *See Spangler*, 836 F. Supp. 2d at 791

("[W]hile in essence [the BJR] is a defense, under Illinois law, it does not appear to be an *affirmative defense*."). Relying on this, Defendants claim that "the FDIC does not sufficiently allege that Defendants failed to act in an informed manner [in approving the Subject Loans] for purposes of circumventing the BJR." Since Courts in this District are in disagreement regarding whether the BJR "should be addressed at the pleadings stage," *Mahajan*, 2012 WL 3061852, at *7; *see Simons v. Ditto Trade, Inc.*, No. 14 C 309, 2015 WL 1918617, at *3 (N.D. Ill. Apr. 28, 2015), we examine the allegations, and conclude that the FDIC's pleadings are adequate. At this stage of litigation, the FDIC need not *show* that Defendants' failed to exercise due care, but rather must adequately *allege* facts to this extent.

The FDIC alleges that, contrary to the loan policy, Defendants "ignored proper credit risk management" and did not "engage in underwriting practices." For example, the FDIC proclaims that Defendants approved loans "without a written or oral presentation," or "in the face of underwriting deficiencies [that were] clear from loan presentations." These purportedly include those that "were identified as undesirable loans in [First United's] Loan Policy," such as those that exceeded First United's debt-to-income ratio and debt service coverage guidelines. The Complaint specifies the debt-to-income ratios of the Subject Loans and the debt service coverage of collateral to the decimal point, identifying how they fell below First United's guidelines. The FDIC also contends that Defendants approved loans "without obtaining necessary information on the collateral," and that they lacked "critical and

timely financial information about the borrower," including borrowers' financial statements. Defendants also purportedly ignored "red flags" in loan presentations, such as borrowers' low net worths and abilities to repay loans. These allegations, among others, are sufficient to *plead* around the BJR. The FDIC need not presently *prove* lack of due care, and it certainly provides Defendants with "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C.*, 496 F.3d at 776 (quoting *Twombly*, 550 U.S. at 545); *see, e.g.*, *Giannoulias*, 918 F. Supp. 2d at 770 (stating that defendants "approv[ed] high-risk loans . . . without proper underwriting," and "ignor[ed] bank's loan policy," "market risks[,] and regulatory warnings"); *Pantazelos*, 2013 WL 4734010, at *6 (stating that defendants "fail[ed] to adhere to required debt-to-income ratios," "permitt[e]d debt service coverage ratios below minimum requirements," "reli[ed] on outdated, unverified, and inadequate financial information for borrowers and guarantors," and "fail[ed] to obtain and review documentation concerning purported collateral"). Thus, Defendants' assertion that the FDIC has not pled around the BJR fails.

Even though the allegations are sufficient, for purposes of completeness, the Court addresses Defendants' additional arguments regarding the BJR. First, Defendants argue that the FDIC faces a treacherous pleading journey, claiming that it "must fight an uphill battle against the BJR's presumption that Defendants were properly informed when approving the Subject Loans, made steeper by case law stating that the Defendants did not need to be aware of all facts regarding the Subject

Loans, and made steeper yet by the FDIC's own allegations indicating that the Defendants did not just rubber-stamp the Loans."  While the FDIC may need to "fight" against the BJR at trial, "the allegations . . . in the complaint need only satisfy Rule 8." *Spangler*, 836 F. Supp. 2d at 788.  The FDIC has satisfied Rule 8.

Second, Defendants focus on the fact that in *Giancola* and other cases in this District, the FDIC alleged that "defendants disregarded specific regulatory warnings and criticisms," which are absent here. *See, e.g.*, 2014 WL 1056643, at *3.  While this is a distinction among the cases, it is not a dispositive one at this stage.  In fact, in *Giancola*, Judge Gottschall became the sixth judge in this District to hold "that where the FDIC alleges that the defendants failed to obtain necessary information to make rational business decisions, the [BJR] does not warrant dismissal." *Id.* at *1.  That is the case here.  The FDIC need not *prove* a lack of due care by Defendants in the Complaint.  At this stage, the FDIC merely needs to *plead allegations* in support thereof.  Contrary to the Defendants' assertion, it is *not* "a more difficult task for the FDIC than simply putting Defendants on notice of the claims against them."

Next, Defendants argue that just because "information was allegedly not contained in a loan presentation," such as borrowers' financial statements or complete global cash flow analyses, that does not mean that Defendants did not consider it, stating that "First United's Loan and Discount Committee had extensive oral conversations about the Subject Loans."  Before us is not a trial on the merits.  The Court does not pass judgment on this argument at this stage of the litigation.  *See*

*Jacobs v. City of Chi.*, 215 F.3d 758, 766 (7th Cir. 2000) ("[T]he district court's reliance on matters outside the complaint in ruling on the motion to dismiss was in error.").

Lastly, Defendants contend that they cannot be held liable because the BJR shields them. Citing the proposition that Defendants need not "be intimately familiar with every proposal and fact" prior to making business decisions, *Shaper v. Bryan*, 371 Ill. App. 3d 1079, 1090 (2007), Defendants assert that "the FDIC simply disagrees with" Defendants' choices. Defendants further cite to *American Enterprise Bank v. Becker*, where following a bench trial, the court found that although "the defendants were incompetent and careless," they did not breach their fiduciary duties of care and loyalty. 2016 IL App (2d) 150179-U ¶ 48. Defendants also claim that by pleading that they did consider information, including: "borrowers' income, global cash flow analyses, debt service ratios [ ], gross rents, net rental income, guarantors' debt to income ratio, borrowers' net worth, guarantors' net income, appraisals, credit scores, repayment sources, projected sales, market conditions, and loan to value ratios," the FDIC's Complaint supports the proposition that the BJR shields Defendants. In making these arguments, "Defendants essentially ask this Court to weigh the evidence and find that they simply exercised their business judgment." *Elmore*, 2013 WL 6185236, at *6. "The Court, however, cannot weigh evidence at this stage of the case." *Id.* The Court is not presently deciding the case on its merits;

but rather, determining whether the FDIC's pleadings are sufficient. We conclude that they are.

### B.    Count II: Gross Negligence

Defendants argue that "the FDIC fails to adequately allege gross negligence." Defendants urge the Court to rewrite the law, encouraging us to turn to Delaware for guidance. There is no need for us to do so—cases in this District are clear.

"A director or officer of an insured depository institution may be held personally liable . . . for gross negligence . . . as . . . defined and determined under applicable State law." 12 U.S.C. § 1821(k). Defendants emphasize that, in Illinois, "[t]here are two competing bodies of case law" defining "gross negligence." Under one approach, "gross negligence" is defined as "very great negligence;" under the other, it is defined as "recklessness." It is unsurprising that Defendants urge the Court to adopt the latter definition, while the FDIC argues that we should use the former.

In 1995, this District defined "gross negligence" as "recklessness." *See Resolution Trust Corp. v. Franz*, 909 F. Supp. 1128, 1141 (N.D. Ill. 1995). However, in more recent opinions, this District has equated "gross negligence" with "very great negligence." *See, e.g.*, *Spangler*, 836 F. Supp. 2d at 785 ("The court in *Gravee* explicitly rejected a recklessness definition of gross negligence, concluding that a showing of 'utter indifference' or 'conscious disregard' was not required under Illinois law."). Defendants claim that the Courts which have adopted the "very great negligence" definition of "gross negligence" are, once again, mistaken. Defendants

argue that the Court in *Gravee* incorrectly adopted the Illinois Supreme Court's definition of "gross negligence" as "very great negligence" from *Massa v. Department of Registration and Education*, ignoring a standard of "recklessness" from a more recent Illinois Supreme Court case at the time, *Ziarko v. Soo Line Railroad*.

We are less convinced by this argument than we are by the fact that recent Northern District of Illinois cases seem to be in agreement that the applicable standard is that of "very great negligence," not "recklessness." *See Amy*, 2014 WL 1018136, at *2 (stating that gross negligence is "greater than negligence but falls short of willful, wanton, or reckless conduct"); *Giannoulias*, 918 F. Supp. 2d at 771 ("*Franz* misstates Illinois law."); *Mahajan*, 2012 WL 3061852, at *4 ("Courts in this district agree . . . that gross negligence is greater than ordinary negligence, but falls short of willful, wanton, or reckless conduct."); *Spangler*, 836 F. Supp. 2d at 785 ("Gross negligence has been defined as 'very great negligence.'"). For better or worse, and irrespective of Defendants' dislike of the Courts' application of precedent, these cases are recent, good law. Defendants argue that "the FDIC fails to state a claim for gross negligence," as the allegations do not support "a finding of recklessness, utter indifference, or conscious disregard by Defendants," citing the Fourth Circuit and a summary judgment opinion from the Eastern District of North Carolina. As explained, the FDIC need not allege this.

Defendants further argue that even should the Court employ "a 'very great negligence' standard of gross negligence, the allegations . . . do not suffice." We

disagree; the FDIC has adequately alleged gross negligence. The FDIC claims that

Defendants' grossly negligent actions and inactions include:

> (a) failing to inform themselves about the Subject Loans and their risks before approving them; (b) approving the Subject Loans on terms that violated the Loan Policy; (c) failing to ensure that the Subject Loans were underwritten in a safe and sound manner before approving them; (d) failing to ensure that the Subject Loans were secured by sufficiently valuable collateral and guarantees in order to prevent or minimize risk; (e) approving the Subject Loans to borrowers who were not creditworthy; (f) failing to ensure that the Subject Loans did not violate applicable banking laws and regulations; and (g) approving the Subject Loans without proper analysis of the borrower's ability to satisfy the debt.

Re-alleging and incorporating the allegations in preceding paragraphs of the

Complaint, the FDIC lends support for its assertions of gross negligence, contending

that Defendants approved loans: although they "lacked critical and timely financial

information about the borrower," such as financial statements; in the face of financial

information that raised questions about guarantors' abilities to repay loans, including

guarantors' credit scores, which were fair to poor; without "necessary information on

the collateral," which would have revealed debt service coverage ratios below First

United's minimum; and although loan presentations "raised questions about the

accuracy of the global cash flow analys[e]s," or lacked global cash flow analyses,

notwithstanding the fact that the FDIC criticized First United in the "Report of

Examination . . . for failing to conduct such analyses." These allegations are

sufficient. *See, e.g.*, *Spangler*, 836 F. Supp. 2d at 788 ("Defendants also state that the

allegations in the amended complaint are 'nothing but vague assertions that officers

and directors did not conform to a loan policy or get a personal guarantee' . . . .
[C]ourts in this district have held that comparable allegations state a claim for gross
negligence."); *Elmore*, 2013 WL 6185236, at *7 (alleging "that Defendants were
aware of specific deficiencies in the bank's underwriting procedures and
administrative practices and approved the Subject Loans in violation of InBank
policy"); *see also Franz*, 909 F. Supp. at 1142 (employing a stricter definition of
"gross negligence," and still denying the motion to dismiss a gross negligence claim
under FIRREA); *R.T.C. v. O'Connell*, No. 94 C 4186, 1996 WL 153866, at *3 (N.D.
Ill. Apr. 1, 1996) (declining to dismiss claim for gross negligence where complaint
alleged failure to obtain "documents such as credit reports and appraisals;" failure "to
properly investigate the background of a signer;" and "funding speculative, non-
recourse ADC loans without adequate security").

## III.    Statute of Limitations Defense: September 2007 JMR Management Loan

Defendants argue that "the FDIC's claims regarding the September 2007 JMR
Management Loan are time barred."  According to Defendants, the Complaint alleges
that, on September 11, 2007, Defendants approved the 2007 loan to JMR
Management.  Thus, Defendants contend that September 11, 2012 was the FDIC's
deadline to claim "negligence or breach of fiduciary duty stemming from" its
approval.  The FDIC, however, asserts that First United "failed on September 28,
2012," which is when the statute of limitations began running, and because it "sued
within five years of [First United's] failure," its claims are timely.

The statute of limitations for the FDIC's claims is five years. *See* 735 ILCS 5/13-205. "A cause of action accrues when the plaintiff knows or reasonably should have known of the injury and that the injury was wrongfully caused." *Wolinsky v. Life Ins. Co. of Georgia*, No. 01 C 5637, 2002 WL 664075, at *2 (N.D. Ill. Apr. 23, 2002); *Vector-Springfield Properties, Ltd. v. Cent. Ill. Light Co.*, 108 F.3d 806, 809 (7th Cir. 1997). Where the complaint "unambiguously" sets forth "the relevant dates," a court may "consider the statute of limitations" on a motion to dismiss. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009).

Defendants argue that their alleged "tortious conduct was the *approval* of the 2007 JMR Management loan," which "was not hidden or lacking in apparentness to First United," making it the trigger for the accrual of the FDIC's claims related to the 2007 loan to JMR Management. Defendants also contend that because the FDIC alleges "that a 'reasonable person' in Defendants' shoes would have voted against the Subject Loan because of information apparent on the face of the materials [that] the approval was based on," this alone is "sufficient information concerning its injury to put a reasonable person on inquiry to determine whether actionable conduct was involved" at the time of approval. *See Vector-Springfield Properties, Ltd.*, 108 F.3d at 809. When the FDIC would even suffer an injury, let alone know or reasonably should know of it, may lie on a spectrum, with a Bank's failure *certainly* placing plaintiff on notice of the injury, a default on a loan *likely* placing plaintiff on notice of the injury, a loan's funding *possibly* placing plaintiff on notice of the injury, and a

loan's approval *potentially* placing plaintiff on notice of the injury, assuming that there was one and that it was wrongfully caused. These are fact questions. While the dates of First United's failure, the loan's approval, and its funding are alleged in the Complaint, the default date of the 2007 loan to JMR Management is not. Consequently, the Court will not rule on the statute of limitations question at this time. *See Elmore*, 2013 WL 6185236, at *3 ("All relevant dates . . . are not set forth unambiguously in the Complaint.").

## CONCLUSION

In an attempt to set aside the slew of current, on-point Northern District of Illinois cases which denied similar motions to dismiss, Defendants state that the case before us is different for two reasons: (i) the other cases "involve extensive allegations of disregard for regulators' warnings;" and (ii) "an Illinois appellate court has provided guidance on the application of the [BJR] to bank directors and officers" after the cited cases. Neither argument changes the FDIC's burden at the pleading stage, which it has met. Counsel should save these arguments for a trial on the merits. For the foregoing reasons, Defendants' motion to dismiss is denied.

_____
Dated: 12/12/2016                    Charles P. Kocoras
                                     United States District Judge